2011 Ark. 43

Audrey HUNTER, William Shepherd, and Daniel Crager, Appellants

v.

Edison RUNYAN; Dwight Pipes; Earl L. Purifoy; John Ross, as The Legal Representative of Elizabeth Ross; Mary Weidman; Durain Weidman; Marion Harris; and Van R. Nolan, each individually and on behalf of all others similarly situated; Transamerica Life Insurance Company; Life Investors Insurance Company of America; Monumental Life Insurance Company; and Aegon USA, Inc., Appellees.

No. 10–306.

Supreme Court of Arkansas.

Feb. 9, 2011.

Rehearing Denied March 31, 2011.

644

Dan Turner and H. Gregory Campbell, Little Rock, for appellant William Shepherd.

Matthews, Sanders & Sayes, Little Rock, by: Doralee Chandler and Gail Matthew, for appellant Daniel Crager.

Tom Thompson and Casey Castleberry and Philip Borher and Scott E. Brady, Batesville, for appellees.

Ryan P. Baudin, Jorden Burt LLP, by: Markham R. Leventhal, Farrokh Jhabvala, and Julianna Thomas McCabe, and Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C., Little Rock, by: John K. Baker, Lyn P. Pruitt, and Jeffrey L. Spillyards, for appellees Transamerica Life Insurance Company, Life Investors Insurance Company of America, Monumental Life Insurance Company, and Aegon USA, Inc.

DONALD L. CORBIN, Justice.

Separate Appellants, Audrey Hunter, William Shepherd, and Daniel Crager, appeal the orders of the Pulaski County Circuit Court denying their separate motions to intervene and approving a class-action settlement between the Appellees who were plaintiffs below, Edison Runyan; Dwight Pipes; Earl L. Purifoy; John Ross, as the legal representative of Elizabeth Ross; Mary Weidman; Durain Weidman; Marion Harris; and Van R. Nolan, each individually and on behalf of all others similarly situated ("the Settling Plaintiffs"), and the Appellees who were defendants below, Transamerica Life Insurance Company; Life Investors Insurance Company of America; Monumental Life Insurance Company; and Aegon USA, Inc. (all of which are affiliated companies and hereinafter referred to as "the Company"). The separate Appellants each raise individual arguments for reversal. In addition, both groups of Appellees have filed motions to dismiss Crager's appeal for lack of standing. This appeal is of substantial public interest in that it involves a nationwide class of approximately 250,000 persons who held supplemental cancer insurance policies and presents an issue of first impression in this state regarding subject-matter jurisdiction in class-action settlements. Jurisdiction is thus properly in this court pursuant to Arkansas Supreme Court Rule 1–2(b)(1) & (b)(4) (2010). We dismiss Crager's appeal for lack of standing. We find no error in the circuit court's orders and affirm.

## I.   *Facts and Procedural History*

The Settling Plaintiffs initiated this case in Pulaski County Circuit Court on March 13, 2009, when they filed a class-action complaint asserting numerous causes of action sounding in contract and tort, both individually and on behalf of a class of current and former policyholders or their legal representatives who held certain supplemental cancer insurance policies and specified disease policies issued by the Company or its predecessor companies. The policies at issue are guaranteed renewable and provide for payment of cash benefits directly to the policyholder based upon the "actual charges" for certain services such as chemotherapy, radiation therapy, blood-related expenses, and other services. It is the Company's change in

its determination and payment of "actual charges" that is at the center |3of this case. In addition to claiming that the Company has underpaid benefits based on "actual charges," the complaint also challenged the Company's premium rate increases.

Among other forms of monetary and nonmonetary relief, the complaint sought a declaration that the undefined term "actual charges" in the policies means the amount paid according to the Company's practice prior to 2006, which was to pay the amount billed on the health-care provider's statement before allowing for any discount, reduction, write-off, or third-party payments. According to the complaint, the Company changed this practice some time in 2006 when it began underpaying benefits according to the amount actually accepted by the health-care provider as payment in full for services rendered.

The Company answered the complaint on April 3, 2009, denying all claims alleged therein and denying that the case was appropriate for class certification. The Company asserted that its correction in claims practices regarding actual charges was motivated by the need to pay benefits in accordance with the terms of the policies, as well as a good-faith attempt to benefit policyholders as a whole by reducing the frequency or amount of future premium rate increases. The Company later explained that health-care billing practices had changed since the mid–1970s when it first developed the "actual charges" policies at issue.

On or about April 17, 2009, the Settling Plaintiffs and the Company executed a class-action-settlement agreement, which defined a conditional settlement class, established a comprehensive notice plan, provided for both monetary and nonmonetary relief to the class, set a limit on attorney's fees for class counsel, and provided for a dismissal and release of all |4claims. The agreement stated that the terms of the settlement would apply not only in the present case, but also in six other class actions that each of the plaintiffs had pending in various federal district courts:

*Pipes v. Life Investors Insurance Company of America,* Case No. 1:07–cv–00035, in the United States District Court for the Eastern District of Arkansas;

*Runyan v. Transamerica Life Insurance Company,* Case No. 6:08–cv–6034, in the United States District Court for the Western District of Arkansas;

*Ross v. Life Investors Insurance Company of America,* Case No. 4:08–cv–00064, in the United States District Court for the Southern District of Mississippi;

*Weidman v. Life Investors Insurance Company of America,* Case No. 2:08–cv–12870, in the United States District Court for the Eastern District of Michigan;

*Harris v. Transamerica Life Insurance Company,* Case No. 572027, in the Nineteenth District Court of the State of Louisiana, East Baton Rouge Parish, removed as Case No. 09–13–JVP–SCR, in the United States District Court for the Middle District of Louisiana; and

*Nolan v. Life Investors Insurance Company of America,* Case No. 3:08–cv–00839, in the United States District Court for the Middle District of Louisiana.

On April 20, 2009, the Settling Plaintiffs and the Company filed with the circuit court a joint motion for preliminary approval of the proposed class-action-settlement agreement. Each side filed briefs and the circuit court held a hearing on the joint motion. On April 23, 2009, at the conclusion of the hearing, the circuit court entered an order finding that the proposed

settlement agreement was sufficiently fair, reasonable, adequate, and in the best interest of the class members to warrant preliminary approval and the sending of notice to the settlement class. The preliminary approval order established a comprehensive notice plan that included personal notice mailed to over 250,000 settlement-class members, publication notice in *USA Today,* a settlement website with access to claims forms and other documents, and a toll-free call center. The preliminary approval order initially set the final fairness hearing for July 27, 2009, and noted that class members who did not opt out could object to the proposed settlement in writing and at the fairness hearing upon compliance with certain parameters. The preliminary approval order noted further that any failure to comply with the objection parameters would operate as a waiver of any objections. Proceedings in the six federal courts were, upon joint motion, stayed pending final approval of the settlement.

Pursuant to the preliminary approval order, notice was mailed to over 250,000 members of the settlement class on May 14, 2009, advising them of the nature of the litigation, the terms of the settlement agreement, their right to object, and their right to exclude themselves or "opt out" of the settlement, along with the deadlines and procedures for doing so. After notice was mailed and published, approximately twenty members filed objections. Some of the objections were withdrawn, and by the time of the fairness hearing only nine objectors remained. Separate Appellants Crager and Hunter were among the nine remaining objectors.

The circuit court postponed the fairness hearing, due in part because counsel for other plaintiffs in competing class actions pending in other jurisdictions had filed requests to enjoin or otherwise delay the settlement or the final fairness hearing in this case. *See, e.g., Gooch v. Life Investors Ins. Co.,* 589 F.3d 319 (6th Cir.2009) (denying mandamus relief, and reversing and vacating an injunction precluding the Company from pursuing this settlement in Pulaski County Circuit Court). The circuit court observed that the plaintiffs in those competing class actions had timely excluded themselves from the present settlement class, but that their attorneys also represented other members of the present settlement class who chose to remain members of the class rather than to exclude themselves. Appellants Crager, Hunter, and Shepherd are among this latter group—those persons who are represented by plaintiffs' counsel in competing class actions, but chose to remain members of the present settlement class and either file an objection to the settlement or a motion to intervene, or both.

Appellants Crager, Hunter, and Shepherd all filed separate motions to intervene, as well as various other preliminary motions for discovery and to stay the circuit court's proceedings. There was another motion to intervene filed by a group of objectors known as the Goad objectors, who later withdrew their motion and objections. The circuit court held three separate hearings in September and October on each of the motions to intervene, and entered an order on December 8, 2009, denying all requests for intervention. In this order, which totaled thirty-one pages, the circuit court discussed the history of the litigation between the parties in the consolidated federal cases, as well as the objections raised by class members and their counsel.

The circuit court held the fairness hearing for final approval of the settlement on November 9, 2009; then on December 21, 2009, entered a twelve-page final order and judgment with an additional sixty-

three pages of findings of fact and conclusions of law. In ₇this final order and judgment, the circuit court gave final approval to the settlement agreement and dismissed with prejudice all class-members' claims.

Separate Appellants Shepherd, Crager, and Hunter each appeal the order denying their motions to intervene. Appellants Shepherd and Crager also appeal the final order and judgment approving the settlement.

## II. *Subject–Matter Jurisdiction*

■ Prior to considering any of the Appellants' arguments raised on appeal, we must first consider the threshold issue of subject-matter jurisdiction raised by Appellant Shepherd. For if the circuit court lacked subject-matter jurisdiction, this court also lacks subject-matter jurisdiction. *Barrows v. City of Fort Smith*, 2010 Ark. 73, 360 S.W.3d 117.

Shepherd contends that the circuit court never acquired subject-matter jurisdiction of this case under amendment 80 to the Arkansas Constitution because the Settling Plaintiffs and the Company had reached agreement as to the material terms of the settlement before suit was ever filed, thereby eliminating the existence of a controversy between the parties. Shepherd argues that the circuit court lacked subject-matter jurisdiction because the interests of the parties were already aligned and no longer adverse when suit was filed. We reject Shepherd's argument because it

is not supported by Arkansas law or by the facts in the record of this case.

We first reject Shepherd's argument because it is not supported by Arkansas law. Shepherd's argument, which erroneously equates a lack of adversity between parties with a lack of subject-matter jurisdiction in an Arkansas court, is not supported by Arkansas ₈jurisprudence on subject-matter jurisdiction, and is additionally contrary to Rule 23(e) of the Arkansas Rules of Civil Procedure. Shepherd's argument is based on the false premise that Arkansas jurisprudence is similar to federal jurisprudence in this area. It is not. Despite Shepherd's assertions to the contrary, Arkansas jurisprudence and federal jurisprudence on subject-matter jurisdiction are more unalike than alike. *See, e.g., Chubb Lloyds Ins. Co. v. Miller County Circuit Court*, 2010 Ark. 119, 361 S.W.3d 809 (observing that standing is one of several doctrines, along with mootness, ripeness, and whether the case involves a political question, which has developed into the *definition of the case or controversy* requirement under federal law, and that Arkansas has not followed the federal analysis and definition of justiciability as a jurisdictional issue).[1]

■ "Federal courts are courts of limited jurisdiction and can only hear actual 'cases or controversies' as defined under Article III of the [United States] Constitution." *Id.* at 10, 361 S.W.3d at 815 (quoting *Neighborhood Transp. Network, Inc. v. Pena*, 42 F.3d 1169, 1172 (8th Cir.1994)).

---

1. Both the Settling Plaintiffs and the Company cite this court to case law from federal courts applying Rule 23 of the Federal Rules of Civil Procedure and concluding that a case is not moot when a settlement is tentative and subject to court approval, even if the settlement is filed simultaneously with the complaint. *See, e.g., Carlough v. Amchem Prods., Inc.*, 834 F.Supp. 1437 (E.D.Pa.1993). Those federal cases, as well reasoned as they may

be, are based on federal concepts of justiciability, which include mootness and lack of adverse interests as components of subject-matter jurisdiction. As we noted earlier in this discussion, Arkansas concepts of justiciability and subject-matter jurisdiction differ significantly from the concepts based on Article III of the United States Constitution. Accordingly, we will not look to those federal cases for persuasive authority in this case.

In Arkansas, however, "[c]ircuit courts are established as the trial courts of original jurisdiction of all justiciable matters not otherwise assigned pursuant to this Constitution." Ark. Const. amend. 80, § 6(A). We note that amendment 80 of the Arkansas Constitution uses the term "justiciable matters," as compared to the term "[c]ontroversies" used in Article III, § 2 of the United States Constitution.

In support of his argument that Arkansas law is similar to federal law on the question of whether a controversy between adverse parties is a jurisdictional requirement, Shepherd cites *MacSteel Division of Quanex v. Arkansas Oklahoma Gas Corp.*, 363 Ark. 22, 210 S.W.3d 878 (2005), wherein this court stated that among other factors that must exist in order to maintain a *declaratory-judgment action,* there must be a justiciable controversy between persons whose interests are adverse. Granted, as Shepherd points out, declaratory relief is one of several forms of relief the Settling Plaintiffs sought in their complaint. However, there is simply nothing in the *MacSteel* case to equate "[t]he requisite precedent facts or conditions, which ... must exist in order that declaratory relief may be obtained" with the subject-matter jurisdiction of the circuit court. *Id.* at 35, 210 S.W.3d at 886. Therefore, Shepherd's citation to *MacSteel* does not support his argument that an Arkansas circuit court has no subject-matter jurisdiction of a case unless the parties are adverse. Any "adverse parties" requirement that Arkansas law may impose by way of *MacSteel* is strictly in the context of a circuit court's *propriety* of exercising its jurisdiction to enter a particular declaratory judgment.

Shepherd also cites *UHS of Arkansas, Inc. v. Charter Hospital of Little Rock, Inc.*, 297 Ark. 8, 759 S.W.2d 204 (1988), and *City of Fort Smith v. Didicom Towers, Inc.*, 362 Ark. 469, 209 S.W.3d 344 (2005), and argues that when there is preexisting litigation between the same parties, a circuit court is precluded from issuing a declaratory judgment. These two cases do stand for the general proposition that a circuit court should not issue a declaratory judgment when there is preexisting litigation between the same parties. But this is true because the question of whether relief should be granted under our Declaratory Judgment Act is a matter resting in the sound discretion of the circuit court, *Didicom Towers,* 362 Ark. 469, 209 S.W.3d 344, and not because of any limitations upon the court's subject-matter jurisdiction. In other words, *UHS of Arkansas* and *Didicom Towers* discuss the issue of preexisting litigation between parties as a matter of a circuit court's *propriety* of exercising jurisdiction to issue a declaratory judgment, rather than as a limitation upon the circuit court's subject-matter jurisdiction. This court clearly stated in *UHS of Arkansas* that

> [o]ur declaratory judgment statute does not confer subject-matter jurisdiction. There must be an independent basis for equitable jurisdiction before a chancery court can render a declaratory judgment. Here, the independent basis for equitable jurisdiction lay in the challenge to the constitutionality of Act 593, as amended. Thus, the "jurisdictional" issue involved in the instant case concerns matters of propriety rather than subject-matter jurisdiction.

*UHS of Arkansas,* 297 Ark. at 12, 759 S.W.2d at 206 (citations omitted). Shepherd's reliance upon *UHS of Arkansas* and *Didicom Towers* is misplaced, as those two cases do not impose any subject-matter-jurisdiction limitations upon the present case.

It is well settled that, in Arkansas, subject-matter jurisdiction is considered to be a court's authority to hear and

decide a particular type of case. *Edwards v. Edwards,* 2009 Ark. 580, 357 S.W.3d 445 (citing David Newbern & John Watkins, *Civil Practice and Procedure* § 2:1, at 19–20 (4th ed.2006)). An Arkansas court lacks subject-matter jurisdiction if it cannot hear a matter "under any circumstances" and is "wholly incompetent to grant the relief sought." *Id.* at 4, 357 S.W.3d at 448 (quoting *J.W. Reynolds Lumber Co. v. Smackover State Bank,* 310 Ark. 342, 352–53, 836 S.W.2d 853, 858 (1992)). An Arkansas circuit court obtains subject-matter jurisdiction when it is conferred under the Arkansas Constitution or by means of constitutionally authorized statutes or court rules. *Id.* The subject matter of the instant case, the approval of a class-settlement agreement in a dispute over an insurance policy, is governed by court rule in this state; specifically, Rule 23(e). We must therefore look to Rule 23(e) to determine if the circuit court had subject-matter jurisdiction of this case.

Rule 23(e)(1) requires that "[t]he court must approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a certified class." Ark. R. Civ. P. 23(e)(1) (2010). Rule 23(e)(2) further requires that "[t]he parties seeking approval of a settlement, voluntary dismissal, or compromise must file a statement identifying any agreement made in connection with the proposed settlement, voluntary dismissal, or compromise." Ark. R. Civ. P. 23(e)(2) (2010). The language of Rule 23(e) is mandatory; it specifically requires court review and approval of a settlement agreement reached in a class-action case. Therefore, according to Rule 23(e), there can be no question that the circuit court certainly had subject-matter jurisdiction to review and approve or not approve the settlement reached in this case. Shepherd's argument regarding subject-matter jurisdiction is therefore not supported by Arkansas law.

We next reject Shepherd's argument regarding subject-matter jurisdiction because there is no support for it in the record of this case. Shepherd asserts that the parties in this case are not adverse because they had reached agreement on the material terms of the settlement prior to the complaint being filed. The complaint was filed on March 13, 2009. The joint motion for preliminary approval of the settlement agreement was filed on April 20, 2009. Although the parties reached an understanding of the parameters of a settlement on March 3, 2009, it was not until April 17, 2009, over a month after the complaint was filed, that the parties actually executed the complete and comprehensive written settlement agreement that was attached as an exhibit to the joint motion and submitted to the court for approval on April 20, 2009. Thus, the record does not demonstrate that the settlement agreement was reached prior to this suit being filed.

Shepherd's jurisdictional argument disregards the significant fact that the settlement agreement, according to its express terms, also applies to the six pending cases in the federal courts. At the hearing on the joint motion for preliminary approval of the settlement agreement, counsel for the Settling Plaintiffs and counsel for the Company explained to the circuit court the history of the contested litigation in the several cases being consolidated and settled in this case. It was not disputed that although this case had recently been filed, they had been litigating against each other since June 2007 when the first of those six cases was filed. Similarly, it was not disputed that settlement negotiations began in October 2008, and were followed by an unsuccessful two-day mediation before a former federal district judge in

November 2008, and a denial of class certification in *Pipes v. Life Investors Insurance Company of America*, 254 F.R.D. 544 (E.D.Ark.2008).

That settlement negotiations were underway at the time the complaint was filed in this case does not demonstrate that the settlement agreement had been finalized, signed, and executed. Moreover, it does not demonstrate that the parties were not adverse. The circuit court found that there was indeed a history of contentious litigation between these parties. Thus, even if the general parameters of a settlement had been reached, the fact remains that the parties were adverse and negotiations could have broken down at any time before the written agreement was executed on April 17, 2009, and filed with the circuit court on April 20, 2009. Indeed, the settlement agreement totals thirty-six pages, with additional exhibits of over fifty pages. The circuit court properly focused on the nature of the adverseness of the contested litigation and the tentative nature of the settlement rather than on the timing of the negotiations. Accordingly, we conclude that Shepherd's contention that the interests of the Company and the Settling Plaintiffs were no longer adverse because the parties had already reached a settlement when the complaint was filed is simply not supported by the record.

Finally, with respect to Shepherd's subject-matter-jurisdiction argument, we note his claim that the lack of a truly adversary proceeding prevented the circuit court from effectively reviewing the fairness of the settlement. Such an argument is an attempt to circumvent his lack of standing to appeal the approval of the settlement agreement. For the same reasons expressed later in our discussion of the motions to dismiss Crager's appeal, Shepherd does not have standing to advance this argument.

■ In summary, we conclude that Arkansas law does not consider a lack of adverseness between parties to be a requirement of subject-matter jurisdiction. Regardless, the record in this case demonstrates that the parties were adverse. Moreover, Rule 23(e) requires court approval of a class-action settlement. Therefore, pursuant to amendment 80 and Rule 23(e), the circuit court had jurisdiction of the subject matter in this case.

### III. *Motions to Dismiss Crager's Appeal*

We next consider the motions of both the Settling Plaintiffs and the Company to dismiss Separate Appellant Crager's appeal due to his lack of standing. They argue that Crager has waived appellate review of the denial of his motion to intervene by not pursuing it in his brief. They argue further that because he did not exclude himself from the settlement class, he lacks standing to challenge on appeal the final approval of the settlement agreement as unfair, unreasonable, and inadequate. For the reasons expressed below, we agree and dismiss Crager's appeal.

■ This court has held that an unnamed class member whose request to intervene is not granted has no standing to appeal the final approval of a class settlement. *Ballard v. Advance Am.*, 349 Ark. 545, 79 S.W.3d 835 (2002), *cert. denied*, 538 U.S. 906, 123 S.Ct. 1484, 155 L.Ed.2d 226 (2003). Likewise, unnamed class members who are not granted intervention do not have standing to appeal other related orders such as the requirement to post bond, or the approval of attorney's fees. *Luebbers v. Advance Am.*, 348 Ark. 567, 74 S.W.3d 608 (2002); *Haberman v. Lisle*, 317 Ark. 600, 884 S.W.2d 262 (1994). This court has recently revisited these holdings and affirmed them in *DeJulius v. Sumner*, 373 Ark. 156, 282 S.W.3d 753 (2008).

In *Ballard,* 349 Ark. 545, 79 S.W.3d 835, this court discussed *Devlin v. Scardelletti,* 536 U.S. 1, 122 S.Ct. 2005, 153 L.Ed.2d 27 (2002), wherein the United States Supreme Court determined that unnamed class members, who have timely objected to the settlement at the fairness hearing, can bring an appeal of the approval of the settlement without first intervening. The *Ballard* court distinguished *Devlin* in that it had differing facts and law. *Devlin* involved a mandatory class action certified under Federal Rule of Civil Procedure 23(b)(2). Unnamed class members have no right to notice or an opportunity to opt out of a class certified under federal Rule 23(b)(2). Such a mandatory class does not exist in Arkansas by operation of Arkansas Rule 23(c)(2), which requires opt-out rights in all class actions. Since *Devlin* was a mandatory class, it did not provide unnamed class members with the option to exclude themselves from the class, while the class in *DeJulius* did have the right to opt out of the class. Thus, after distinguishing *Devlin,* the *Ballard* court went on to conclude that *Haberman* was the applicable and controlling law, such that unnamed class members who fail to intervene are precluded from appealing a class settlement. It is now well-settled law in this state that an unnamed class member who does not intervene cannot appeal a settlement approved by the class, even if the unnamed class member objected to the settlement.

*DeJulius* affirmed *Ballard* and is the law that controls this case. As this court stated in *DeJulius,* by attempting to intervene rather than opt out of a settlement, Crager undertook the risk that his motion to intervene would be denied for failure to satisfy the requirements of Rule 24 of the Arkansas Rules of Civil Procedure, and that he would then be bound by the settlement as approved by the circuit court. Crager's strategic election not to opt out of the settlement class has left him without standing to pursue an appeal of the settlement.

Of course, Crager does have standing to appeal the denial of his motion to intervene. In such an appeal, he would receive appellate review of the issues related to the settlement that he seeks. For example, the issue of whether his due-process rights are violated by our requirement that he first intervene to obtain standing to appeal the settlement would arise in the context of the appeal of the denial of his motion to intervene. That is, assuming of course that Crager raised such a due-process argument below to the circuit court, which he did not. Arguments not raised below, even constitutional ones, are waived on appeal. *Warnock v. Warnock,* 336 Ark. 506, 988 S.W.2d 7 (1999). As another example, the issue of whether his interest was adequately represented by the class and class counsel would, again assuming it was preserved for review, arise in the context of whether Crager had an interest that was inadequately represented by the parties to warrant intervention under Rule 24. However, although Crager's notice of appeal stated that he was appealing from the order denying his motion to intervene, he did not in his brief to this court assign any error to the circuit court's analysis or findings with respect to the denial of his motion to intervene. Crager's appeal of the denial of his motion to intervene is therefore abandoned, as arguments not advanced on appeal must be deemed abandoned. *See Robbins v. Johnson,* 367 Ark. 506, 241 S.W.3d 747 (2006). In summary, Crager has waived by abandonment the appeal of his motion to intervene, and his election to remain in the class has left him without standing to appeal the settlement. Accordingly, consistent with our holding in

*Haberman,* we grant the motions to dismiss Crager's appeal.

## IV. *Denial of Hunter's and Shepherd's Motions to Intervene*

We next consider the appeals by Hunter and Shepherd of the denial of their motions to intervene. Although the circuit court held separate hearings and heard argument from four groups seeking to intervene in this action, only the separate motions to intervene filed by Appellants Crager, Hunter, and Shepherd remained at the time the circuit court entered its December 8, 2009 order denying the motions. The three motions sought intervention as a matter of right pursuant to Rule 24(a) and permissive intervention pursuant to Rule 24(b). The circuit court found that none of the requests for intervention complied with the procedural requirements of Rule 24(c) and denied the motions on that basis alone. In addition, the circuit court found that Crager, Hunter, and Shepherd were not entitled to intervene as a matter of right. In the exercise of its discretion, the circuit court further declined to grant the three unnamed class members permissive intervention.

As we have previously determined, Crager has waived the appeal of his motion to intervene. Separate Appellants Hunter and Shepherd have preserved their arguments for our review, and we now consider their arguments together.

Permissive intervention is a matter within the circuit court's discretion and is subject to the abuse-of-discretion standard of review. *Billabong Prods., Inc. v. Orange City Bank,* 278 Ark. 206, 644 S.W.2d 594 (1983). When intervention of right is at issue, however, our standard of review has not been set forth when the denial is based on the failure to meet the requirements of Rule 24 rather than on the untimeliness of the motion. *DeJulius,*

373 Ark. at 159–60 n. 3, 282 S.W.3d at 755 n. 3. There are no issues of timeliness raised in the present appeal. The parties in the present case have agreed, without briefing the issue, that the appropriate standard of review to be applied here is abuse of discretion. We are hesitant to set forth a standard of review when the parties on appeal have not addressed the issue. However, to remain consistent with our approach in *DeJulius,* we will apply the abuse-of-discretion standard in reviewing these two motions.

On appeal, Shepherd and Hunter allege that the circuit court erred in finding that their motions to intervene did not comply with the procedural requirement of Rule 24(c) of the Arkansas Rules of Civil Procedure. The circuit court found that Hunter's motion was procedurally defective for failure to attach the pleading required by Rule 24(c) "setting forth the claim or defense for which intervention is sought." Ark. R. Civ. P. 24(c) (2010). The circuit court relied on *Polnac–Hartman & Associates v. First National Bank in Albuquerque,* 292 Ark. 501, 731 S.W.2d 202 (1987), in which this court stated that a motion to intervene is deficient and does not show an entitlement to intervene as of right or permissively if it attaches no pleading, because without the pleading the circuit court "may not have any idea of the right asserted by the would-be intervenor." *Id.* at 504, 731 S.W.2d at 204. As for Shepherd's motion, which was accompanied by a proposed complaint in intervention, the circuit court found that it was "procedurally deficient because it failed to make any class action allegations consistent with Rule 23, and it was admittedly filed so that Shepherd could stay this action rather than to pursue a claim or defense." The circuit court clearly concluded, "[b]ecause each of the Motions to Intervene was procedurally defective, they

are DENIED in the exercise of the Court's discretion on that basis alone."

Hunter argues that her failure to attach a pleading was not fatal because the circuit court was fully apprised of the facts and arguments justifying the relief she sought in her motion. She cites *Lowell v. Lowell,* 55 Ark. App. 211, 934 S.W.2d 540 (1996), where the court of appeals applied *Polnac–Hartman,* 292 Ark. 501, 731 S.W.2d 202, and found no abuse of discretion in granting a father's request to intervene in his son's dependency-neglect proceeding, despite the father's failure to attach a pleading to his motion. The court of appeals reasoned that, because the trial court was informed, by way of the motion itself and attached affidavits, of the rights to be asserted by the would-be intervening father, the purpose behind Rule 24(c) was satisfied.

⬛ [20]Hunter contends that there can be no reasonable dispute that she properly advised the circuit court of the facts, allegations, and specific relief sought in her motion to intervene by way of the motion itself, the supplemental objection, and the argument of counsel at the hearing. We disagree. Hunter's motion to intervene made only broad and conclusory allegations that her interest was not being adequately represented by the class, and it offered little, if any, information to the circuit court of the "claim" she would assert if allowed to intervene.

As for her motion, there was Hunter's assertion that the class definition was too broad because it "fail[ed] to account for significant differences in state law that make it unfair to deny residents of various states, such as Texas, the ability to take advantage of advantageous provisions of their own states' consumer laws." At the hearing on the motion, Hunter's counsel offered nothing more than conclusions unsupported by any allegation of facts or law, when he argued to the circuit court that Hunter's home state of Texas would likely interpret the phrase "actual charges" as the amount stated on a provider's bill and that Texas, unlike Arkansas, has a more liberal view of an insured's right to bring a bad-faith claim. As for Hunter's supplemental objection, it offered nothing additional from which the trial court could have identified the claim that Hunter would assert if granted intervention. The Settling Plaintiffs' complaint asserted at least nine causes of action ranging from breach of contract and bad faith to fraud and equitable estoppel. The complexity of the instant litigation covering multiple states underscores the necessity of Rule 24's requirement that a motion to intervene [21]be accompanied by a pleading setting forth "the claim or defense for which intervention is sought." Ark. R. Civ. P. 24(c).

We are not persuaded that Hunter's case is more like *Lowell,* 55 Ark. App. 211, 934 S.W.2d 540, than *Polnac–Hartman,* 292 Ark. 501, 731 S.W.2d 202. The claim sought to be asserted in *Lowell,* which is the claim that a father would have in his son's dependency-neglect proceeding, while of the utmost importance, is not nearly as complex and difficult for a trial court to discern in the absence of a pleading as would be the claim of an assignee of multiple notes and mortgages in a foreclosure action, as was the case in *Polnac–Hartman,* or as would be the claim of a single unnamed class member in a multistate settlement class of 250,000 persons, as in this case. Despite the bare conclusions alleged in Hunter's motion, supplemental objection, and by her counsel at the hearing, there remained nothing from which the circuit court could determine what claim or claims, for bad faith or otherwise, Hunter would assert upon intervention. Accordingly, we find no abuse of

discretion in the circuit court's denial of Hunter's motion to intervene because it was not accompanied by a pleading as required by Rule 24(c).

■ As for Shepherd, he takes issue with the circuit court's finding that his accompanying complaint was procedurally deficient because "it failed to make any class action allegations consistent with Rule 23, and it was admittedly filed so that Shepherd could stay this action rather than to pursue a claim or defense." Shepherd challenges the first part of this finding, arguing that Rule 24 does not require him to make class allegations consistent with Rule 23 and that the circuit court abused its discretion by imposing requirements beyond those set forth in Rule 24. The circuit court's finding does not impose a requirement beyond that imposed by Rule 24. Rather, this finding is simply an indication that Shepherd's complaint had not alleged anything that would enhance the representation of the class because it did not allege anything beyond what was already alleged in the complaint filed by the class representatives. In short, the circuit court found that Shepherd's complaint asserted only his individual causes of action. The record supports such a finding, and we see no abuse of discretion with respect to it.

Shepherd next challenges the second component of the circuit court's finding and argues that the record does not support the determination that Shepherd's intent in seeking intervention was to stay the settlement rather than to pursue a claim or defense. On the contrary, the record clearly supports the circuit court's finding that Shepherd admitted he was seeking to intervene for the express purpose of delay. Two days after he filed his motion to intervene, Shepherd filed with the circuit court a request for expedited consideration of his motion to intervene, wherein Shepherd informed the circuit court that on the same day he had filed his motion to intervene, his counsel had also filed, on behalf of another client in a competing class action, an emergency motion for injunctive relief prohibiting the Company from pursuing final approval of the settlement agreement in the instant proceedings. *See Gooch,* 589 F.3d 319. Shepherd's motion also stated that he was requesting expedited consideration "so that he may then file his own motion to stay these proceedings." The record therefore clearly supports the circuit court's finding regarding Shepherd's purpose. We find no abuse of discretion in the circuit court's conclusion that Shepherd's motion to intervene was procedurally defective because the accompanying complaint did not contain any class allegations and because Shepherd's purpose in seeking intervention was to delay the settlement proceedings rather than to pursue a claim or defense.

The circuit court's order clearly found that Hunter's and Shepherd's motions to intervene were procedurally defective and were denied on that basis alone. We affirm that decision as being without an abuse of discretion.

■ The circuit court went on, however, to analyze the motions under Rules 24(a) and (b) governing intervention as of right and permissive intervention. On appeal, Appellants Hunter and Shepherd assign error to this analysis as well. We need not address in detail these assignments of error, however, as we have affirmed the circuit court's ruling that the interventions should be denied because the motions were procedurally deficient. Suffice it to say here that any interests that Hunter and Shepherd intended to assert in this case were either protected by the class representatives or by their right to opt out of the settlement class. They both

made a strategic decision to remain in the class, and were unable to identify any reason why the class representatives could not adequately represent their interests. Intervention of right is correctly denied under such circumstances. *DeJulius,* 373 Ark. 156, 282 S.W.3d 753. They both made it clear that they sought intervention for the express purpose of delaying the settlement proceedings. As the circuit court found, delay in the class members' receipt of their settlement benefits is cause for denial of permissive intervention. *Ballard v. Garrett,* 349 Ark. 371, 78 S.W.3d 73 (2002). Accordingly, there was no abuse of discretion in denying the motions to intervene.

## V. *Hunter's Remaining Points on Appeal*

There are two remaining points on appeal raised in Hunter's brief. The first of these is that by preventing the intervention of objectors, the circuit court immunized its fairness determination from appellate review and thus denied Hunter's and other objectors' due-process rights. At the hearing on her motion to intervene, Hunter's counsel argued to the circuit court that if it did not grant intervention to an absent class member, that would mean that not one absent class member could obtain appellate review of the settlement. Hunter, however, never raised the due-process aspect of this argument to the circuit court, and we therefore do not consider that aspect any further. Issues are waived that are raised for the first time on appeal, and we do not address any argument, including a constitutional argument, that was not raised below. *Warnock,* 336 Ark. 506, 988 S.W.2d 7. As for her argument concerning the circuit court's immunizing from appellate review its decision to approve the settlement, we reiterate our previous observation that the concerns raised about the settlement by an objector who has been denied intervention are concerns that will receive appellate review in the context of an appeal of the denial of the motion to intervene.

Hunter's second and final point on appeal is that the circuit court arbitrarily denied her due-process right to discovery and to participate in the hearing. This argument is wholly without merit. Hunter waived her right to participate in the hearing in her pro se objection that she timely filed with the circuit court. She timely raised her objections in her pro se letter to the court and clearly told the court she would not appear at the hearing. After the deadline for objecting had passed, however, she hired counsel who attempted to file a supplemental objection, to request discovery, and to appear at the final hearing. Because these additional requests were untimely according to the time set in the notice to class members, the circuit court denied them. Contrary to her assertions, the circuit court did not prohibit Hunter or her counsel from attending the final hearing, it only denied her counsel's supplemental requests for discovery and to participate in the final hearing because they were untimely and inconsistent with her pro se objection. It is significant that the circuit court did allow Hunter's counsel to appear at the hearing on her motion to intervene and to present argument as to these supplemental requests; thus, Hunter did have an opportunity to be heard by her counsel on these requests. The record supports the circuit court's reasoning that the class members had previously engaged in adequate discovery, and that counsel's request to appear at the final hearing was untimely and contrary to Hunter's initial timely pro se objection. We find no abuse of discretion in the circuit court's denial of these additional requests.

The order of the circuit court denying Hunter's and Shepherd's motions to intervene is affirmed. The motions to dismiss Crager's appeal are granted.

Affirmed in part; dismissed in part.